## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BLACKAMG, LLC | ) | Case No.      14-32758 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |

### HALSTED INVESTMENT PARTNERS, LLC'S
### MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION TO DISMISS

HALSTED INVESTMENT PARTNERS, LLC ("Halsted"), by its counsel and pursuant to 11 U.S.C. § 305 and §1112(b), submits this memorandum in support of Debtor's motion to dismiss the captioned chapter 11 case (Dkt. 48, hereinafter the "Motion").[1]

### INTRODUCTION

1.      The Debtor has only one asset: a three story mixed use apartment building, with two storefronts located at 3339-41 N. Halsted, Chicago Illinois (the "Property"). Northbrook Loans LLC ("Northbrook") holds the mortgage on the Property, and is owed (as of the petition date), at least $ 2,600,000.

2.      The exceedingly curious posture of this case—in which the secured creditor is the sole party *resisting* dismissal of this bankruptcy should be enough to sound an alarm and raise the suspicions of this Court and the US Trustee as to Northbrook's motives. That alarm should reach a deafening level when you consider that Northbrook commenced a suit to foreclose on the Property *more than four years ago,* and obtained a judgement of foreclosure and sale for the Property in November, 2012.

---

[1]      Except as otherwise expressly stated herein, Halsted adopts and incorporates by reference the legal arguments in the Motion, as well as the legal arguments offered by OUT Chicago, LLC in support of the Motion (Dkt. ___).

3.       Yet now, Northbrook would have this Court believe that the best interest of all creditors would be served by having the case converted to Chapter 7 (rather than dismissed), so that a trustee could be appointed (despite the administrative expenses that will be incurred) to sell the Property pursuant to section 363 of the Bankruptcy Code (even though there is a pending foreclosure and ordered sale).

4.       In truth, Northbrook's position is solely about *its* best interests, and represents a thinly veiled attempt to misuse these proceedings and this Honorable Court to evade and avoid its contractual obligations to sell the Property (as well as an adjoining parcel) to Halsted. As set forth more fully below, the bankruptcy case should be dismissed, *not* converted.

### HALSTED'S INTEREST IN THE BANKRUPTCY CASE AND THE PROPERTY

5.       On March 23, 2011, Northbrook filed a complaint to foreclose its mortgage on the Property, captioned *Northbrook Loans, LLC vs. BLACKAMG, L.L.C. et al.*, currently pending in the Circuit Court of Cook County as case number 11 CH 11120, (the "Foreclosure Action"). A receiver was appointed for the Property on or about June 8, 2011, and has remained in possession of the Property at all times thereafter. As Northbrook's counsel admitted in open Court, the Property has, to date, has generated positive cash flow.

6.       While the Foreclosure Action was pending, Northbrook entered into a sale contract dated April 23, 2012[2] with Wells Street Companies, Inc., Halsted's predecessor in interest.[3] The contract was modified and amended by letter agreements dated May 14, 2012 and May 17, 2012. The contract and letter agreements are defined collectively in the Motion as the "Wells Contract." Copies of Wells Contract are submitted herewith as Group Exhibit A.

---

[2]     The Motion incorrectly identified the date as April 23, 2014.

[3]     Pursuant to an Assignment and Assumption Agreement dated July 17, 2013, Wells assigned all of its right, title and interest in the Wells Contract to Halsted.

7.      The Wells Contract obligates Northbrook to sell to Halsted *both* the Property as well as an adjacent parcel of real estate at 3335-37 North Halsted[4] for $3.5 million, subject to the condition that either Northbrook or Halsted successfully acquires title to the Property. Per the express provisions of Contract, the partied agreed "that in the event that both [Northbrook] and [Halsted] fail to acquire title to the [Property], the contract shall become null and void and [Halsted] shall be entitled to the return of its [$50,000] earnest money deposit." *See* May 14, 2012 letter agreement, at ¶ 14(d) and May 17, 2012 letter agreement at ¶ 14. The Wells Contract was recorded with the Cook County Recorder of Deeds on May 2, 2013.

8.      By order dated November 28, 2012, the Hon. Judge Robert Senechalle entered judgment in favor of Northbrook in the Foreclosure Action, and ordered that the Property be sold. A copy of the foreclosure and sale order is submitted herewith as Exhibit B. The Property was not sold, however in 2012.

9.      Instead, by Motion filed on May 30, 2013, Northbrook sought an order modifying *nunc pro tunc* the foreclosure and sale order to account for a credit that Debtor should have received based upon a judicial sale of other property on which Northbrook had already foreclosed. Significantly, however, that foreclosure was completed in March 2012, and thus it was (and is) is inexplicable that Northbrook would wait so long to seek modification of the foreclosure and sale order.

10.     And even after an amended order of foreclosure was entered on August 13, 2013, Northbrook took no steps to move forward with the court ordered sale. As it became clear to

---

[4]      The parcel at 3335-37 North Halsted had been owned by E55, LLC, an affiliate of the Debtor, and was also subject to a mortgage held by Northbrook. At the time it executed the Wells Contract, Northbrook had completed its foreclosure of the 3335-37 North Halsted property, and was the owner of that property.

Halsted that Northbrook was purposefully delaying the sale of the Property, Halsted took steps to protect its interests under the Wells Contract and in the Property.

11.     First, JAB Real Estate, Inc., another of Halsted's predecessors in interest, entered into an agreement with Debtor dated April 29, 2013 to purchase the Property for $2,550,000 free and clear of all liens and encumbrances (the "JAB Contract).[5] A copy of the JAB Contract is submitted herewith as Exhibit C.

12.     Unbeknownst to Halsted, however, the Debtor executed a contract with OUT Chicago, LLC dated September 12, 2013 to purchase the Property for the price of $2,550,000 subject to existing all liens and encumbrances except the Northbrook mortgage (the "OUT Contract").

13.     Days after the Debtor executed the OUT contract, Halsted commenced litigation against Northbrook styled *Halsted Investment Partners, LLC v. Northbrook Loans, LLC*, currently pending in the Circuit Court of Cook County as case number 13 CH 21556, seeking an order of seeking specific performance of the Wells Contract (the "Specific Performance Litigation"). A copy of the Complaint is attached as Exhibit D.

14.     In response, Northbrook moved to dismiss the Specific Performance Litigation, arguing that the condition precedent—that "either Northbrook or Halsted will be the successful bidder if and when a judicial sale is ordered" with respect to the Property—has not yet occurred. *See* Motion to Dismiss, submitted herewith as Exhibit E, at ¶ 10.

15.     **Halsted believes that sole reason that Northbrook urged the Debtor to file for Bankruptcy, and is now resisting dismissal and championing conversion, is to promote its own self-interest.** Plainly, Northbrook believes that the Property and adjoining parcel are

---

[5]     Pursuant to an Assignment and Assumption Agreement dated August 12, 2013, JAB assigned all of its right, title and interest in the JAB Contract to Halsted.

collectively worth more than the $3.5 million that it will receive if it is required to sell both parcels to Halsted. And apparently, Northbrook believes (albeit incorrectly) that if the Property is sold pursuant to § 363 of the Code, rather than a sheriff sale, then it is will not be obligated to honor its contractual obligation to sell the two parcels to Halsted. This Court should not permit Northbrook to use the Bankruptcy Code as a tool to assist it (as a non-debtor) in avoiding its obligations under the Wells Contract.

## THE CASE SHOULD BE DISMISSED, RATHER THAN CONVERTED

16.    In addition to the right to dismiss this case under 11 U.S.C. §1112(b)(1), §305(a) of the Code expressly provides that this Court, "after notice and hearing, may dismiss a case under this title , or suspend all proceedings in a case under this title, at any time if ... the interests of creditors and the debtor would be better served by such dismissal or suspension." See *In re 801 South Wells Street L.P.,* 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996).

17.    Dismissal under section 305 is a matter of the Court's discretion, and the Court's determination should be made on a case-by-case basis based upon the following established criteria:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*Id.*

18.     The case at bar is actually similar in many respects to *801 S. Wells St. L.P .,* in which an involuntary proceeding was commenced against a debtor whose sole asset was real property that was subject to multiple mortgages and where foreclosure proceedings had already been commenced. Before a final judgment could be entered as to the priority of the applicable security interests, one of the mortgagees commenced an involuntary petition for relief under chapter 11. The debtor had no equity interest in the subject property and no ability to reorganize, and together with the unsecured creditors, requested dismissal under both § 305(a) and § 1112(b). 192 B.R. at 722-23.

19.     In dismissing the bankruptcy, the Court in *801 S. Wells St. L.P.,* focused on two of the referenced factors. First, the Court concluded that the foreclosure proceeding, which had been pending for two years, was an available forum adequate to adjudicate the interests of the various creditors. *Id.* at 724. The Court cited a number of bankruptcy case in other jurisdictions in which courts were persuaded to dismiss bankruptcies in favor of suitable alternative forums where the debtor had already been in receivership for so long that bankruptcy "would be duplicative and wasteful," or where bankruptcy courts were confronted with intra-company disputes that would have to be resolved. *Id.* at 725.

20.     Second, the Court in *801 S. Wells St. L.P.,* concluded that continuing the case would not serve any "bankruptcy purpose," in that there would not be a reorganization and "fresh start" for the debtor, and that bankruptcy was not necessary to ensure "creditor democracy," ie., that similarly situated creditors would be treated comparably and fairly. Quite the contrary, the Court concluded that "fair and equitable treatment among the secured creditors was afforded by the state court in its determinations as to the relative priority of their liens." *Id.* at 726.

21.     Finally, the Court in *801 S. Wells St. L.P.,* also held that dismissal was appropriate for cause under § 1112(b), reasoning that the case was filed in bad faith. The Court succinctly concluded that "[a]llowing this case to continue would permit imaginative lawyers to misapply the bankruptcy remedies by contriving quixotic, albeit technically 'possible" reorganization schemes to justify their improper filing." *Id.* at 727 (internal citations omitted).

22.     The Court's reasoning in *801 S. Wells St. L.P.,* applies with equal vigor to this case. Although the case at bar was not initiated by the filing of an involuntary petition, it is secured creditor Northbrook Bank, standing alone, that is objecting to dismissal of the case and that is requesting conversion of the case to Chapter 7.

23.     Similarly, in this case, just as there was in *801 S. Wells St. L.P.,* there is another available forum—the state court and the foreclosure proceedings that have been pending for more than *four years*—this is adequate to adjudicate the interests of the various creditors. It would be "duplicative and wasteful," to continue these proceedings, particularly where the court would likely have to resolve the proper construction of the Wells Contract before a §363 sale could move forward.[6] *See id.,* at 725.

24.     Moreover, just as in *801 S. Wells St. L.P.,* continuing this case would not serve any "bankruptcy purpose," as there will not be any reorganization and the pending state court foreclosure proceedings are more than adequate to fully and fairly address the relative rights and priorities of all creditors claiming an interest in the Property. *See id.* at 726.

---

[6]     Halsted disputes that the Wells Contract (as amended by the letter agreements) contains a condition precedent that can only be satisfied if Northbrook or Halsted acquire the property as the successful bidder at a sheriff's sale in the foreclosure proceedings (as opposed to any other form of judicially approved sale). An adjudication of the proper construction of the Wells Contract would have to proceed before any §363 sale could occur so that Halsted could be apprised of its rights as a potentially successful bidder at that sale.

25.     Finally, although the petition may not have been filed by Debtor in bad faith, Northbrook's motives for seeking a conversion of the case and a §363 sale are improper. Northbrook is simply attempting to use the Bankruptcy Court as a foil to avoid its obligation under the Wells Contract.

26.     If the Court converts the case and approves a §363 sale, this will not be a case in which the necessary "condition precedent" to Northbrook's performance under the Wells Contract simply did not occur, thereby excusing Northbrook's performance. Instead, this will be a case in which Northbrook *prevented* the condition precedent from occurring, dragging its feet in the foreclosure proceedings, encouraging the filing of this bankruptcy (and then apparently refusing to negotiate with OUT regarding a reorganization), and advocating for a § 363 sale so that there will never be a foreclosure sale. Northbrook's active interference with the occurrence of the condition precedent is tantamount to bad faith, and cannot be permitted to excuse its performance. *See, e.g., Gould v. Artisoft, Inc.,* 1 F.3d 544, 549 (7th Cir. 1993)("where satisfaction of a condition is within control of one party, that party may not prevent satisfaction of the condition in order to escape its contractual obligations."); *Unit Trainship, Inc., v. Soo Line Railroad Co.,* 905 F.2d 160, 163 (7th Cir. 1990)("Under Illinois law, where a party's obligation is subject to a condition precedent, a duty of good faith and fair dealing is imposed upon that party to cooperate and to not hinder the occurrence of the condition."); *Midwest Builder Distributing, Inc., v. Lord and Essex, Inc.,* 383 Ill. App. 3d 645, 672 (1st Dis. 2007)("When a contract is contingent upon satisfaction of a condition, and the other party has discretionary power over that condition, it is in most circumstances quite reasonable to expect that party to take affirmative steps to see that the condition is satisfied."); *Kipnis v. Mandel Metals, Inc.,* 318 Ill. App. 3d 498, , 505-06 (1st Dist. 2000 (implied covenant of good faith prevented defendant

from relying on plaintiff's failure to perform a contractual condition precedent when the defendants lack of cooperation hindered plaintiff's attempted performance).  This Court should not assist Northbrook in avoiding its contractual obligations, and should dismiss this bankruptcy case.

## CONCLUSION

For the reason set forth above, the bankruptcy case should be dismissed, and any request by Northbrook that the case be converted should be rejected.


Dated:  April 20, 2015


                                        Respectfully Submitted,

                                        **HALSTED    INVESTMENT    PARTNERS,**
                                        **LLC**


                                        By:_ /s Andrew A. Jacobson___
                                             One of its Attorneys


Andrew A. Jacobson (ARDC # 6211224)
Glenn M. Kanter (ARDC# 6295134)
Brown, Udell, Pomerantz & Delrahim, Ltd.
1332 North Halsted Street, Suite 100
Chicago, Illinois 60642
Phone: (312) 475-9900
Fax: (312) 475-1188


2535972/1/14760.003                          9

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2015 I caused the foregoing **MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION TO DISMISS** to be filed with the Court via the ECF system, which will send notification of such filing to all Counsel of Record appearing this matter.

Respectfully submitted ,

By:   /s/Glenn M. Kanter

Glenn M. Kanter (ARDC # 6295134)
**BROWN, UDELL, POMERANTZ & DELRAHIM, LTD.**
1332 North Halsted Street, Suite 100
Chicago, Illinois 60642
(312) 475-9900