# EXHIBIT C

## ASSIGNMENT AND ASSUMPTION AGREEMENT

For TEN DOLLARS and other good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged, JAB REAL ESTATE, INC. ("Assignor"), does hereby assign, transfer and convey all of its right, title and interest in and to that certain Apartments/Investment Purchase and Sale Contract dated April 29, 2013 between Assignor and BLACKAMG, L.L.C., a copy of which is attached hereto (the "Agreement"), relating to the acquisition of that certain real estate commonly known as 3339-41 N. HALSTED, CHICAGO, ILLINOIS to HALSTED INVESTMENT PARTNERS, LLC, an Illinois limited liability company ("Assignee"), and Assignee does hereby assume all payments, terms and obligations arising under and in connection with the Agreement that may accrue subsequent to the date hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the 12th day of August, 2013.

Assignor:

JAB REAL ESTATE, INC.

By: _____
Its: Vice-President

Assignee:

HALSTED INVESTMENT PARTNERS, LLC,
an Illinois limited liability company

By: Wells Street Equities, LLC
Its: Manager

By: _____
Arthur Holmer, Manager




**CHICAGO ASSOCIATION OF REALTORS®**
**APARTMENTS/INVESTMENTS PURCHASE AND SALE CONTRACT**
Rev. 01/2008

1  1. **Contract.** This Apartment/Investments Purchase and Sale Contract ("*Contract*") is made by and between **JAB Real Estate, Inc.**
2  _____ ("*Buyer*") and **OOR**_____ ("*Seller*")
3  (collectively, "*Parties*"), with respect to the purchase and sale of the real estate and improvements located at:
4  **3339-41 N Halsted, Chicago, IL 60657**_____ ("*Property*").
5  (address)            (unit #)    (city)      (state)   (zip)

6  Property P.I.N. #: **14-21-308-070-0000**_____ Lot size: **38' x 109'**____, Approximate square feet of Property:_____.

7  2. **Fixtures and Personal Property.** At Closing (as defined in Paragraph 7 of this Contract), in addition to the Property, Seller shall transfer to
8  Buyer by a Bill of Sale, all heating, cooling, electrical and plumbing systems, together with the following checked and enumerated items ("*Fixtures*
9  *and Personal Property*"):
10 ☐ Refrigerator___   ☐ Sump Pump___            ☐ Central air conditioner___   ☐ Fireplace screen     ☐ Built-in or attached
11 ☐ Oven/Range___    ☐ Smoke and carbon monoxide ☐ Window air conditioner___     and equipment___       shelves or cabinets___
12 ☐ Microwave___        detectors___           ☐ Electronic air filter___    ☐ Fireplace gas log___  ☐ Ceiling fan___
13 ☐ Dishwasher___    ☐ Intercom system___       ☐ Central humidifier___       ☐ Firewood___          ☐ Radiator covers___
14 ☐ Garbage disposal___ ☐ Security system___ (rented or owned) (strike one)  ☐ Attached gas grill___ ☐ All planted vegetation___
15 ☐ Trash compactor___ ☐ Satellite Dish___     ☐ Lighting fixtures___         ☐ Existing storms      ☐ Outdoor play set/swings___
16 ☐ Washer___        ☐ T.V. antenna___         ☐ Electronic garage door(s)     and screens___         ☐ Outdoor shed___
17 ☐ Dryer___         ☐ LCD/plasma/multimedia equipment___ with ___ remote unit(s)___ ☐ Window treatments___
18 ☐ Water Softener___ ☐ Stereo speakers/surround sound___ ☐ Wall-to-wall carpeting___ ☐ Home warranty (as attached)___

19 Seller also transfers the following:_____. The following items are excluded:_____

20 3. **Purchase Price.** The purchase price for the Property (including the Fixtures and Personal Property) is $ **2,550,000**_____ ("*Purchase
21 *Price*").

22 4. **Earnest Money.** Upon Buyer's execution of this Contract, Buyer shall deposit with **Chicago Title and Trust**
23 ("*Escrowee*"), initial earnest money in the amount of $ **25,000**_____, in the form of **Check**_____ ("*Initial Earnest
24 *Money*"). The Initial Earnest Money shall be returned and this Contract shall be of no force or effect if this Contract is not accepted by Seller on or
25 before **April 30**_____, 20**13**. The Initial Earnest Money shall be increased to (strike one) 10% of the Purchase Price OR $ **100,000**
26 ("*Final Earnest Money*") within **1**_____ business days after the expiration of the Attorney Approval Period (as established in Paragraph 14 of this
27 Contract) (the Initial and Final Earnest Money are together referred to as the "*Earnest Money*"). The Parties acknowledge and agree that (i) the
28 Parties shall execute all necessary documents with respect to the Earnest Money in form and content mutually agreed upon between the parties and
29 (ii) except as otherwise agreed, Buyer shall pay all expenses with respect to the Earnest Money.

30 5. ~~Mortgage Contingency. This Contract is contingent upon Buyer securing by _____, 20___ ("First Commitment Date") a firm
31 written mortgage commitment for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association,
32 bank, or other authorized institution, in the amount of $_____, the interest rate (or initial interest rate if an adjustable rate mortgage)
33 not to exceed ___% per year, amortized over ___ years, payable monthly, loan fee not to exceed ___%, plus appraisal and credit report fee, if any
34 ("Required Commitment"). If the mortgage secured by the Required Commitment has a balloon payment, it shall be due no sooner than ___ years.
35 Buyer shall pay for private mortgage insurance as required by the lending institution. If a FHA or VA mortgage is to be obtained, Rider 8, Rider 9,
36 or the HUD Rider shall be attached to this Contract. (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date,
37 Buyer shall so notify Seller in writing on or before that Date. Thereafter, Seller may, within 30 business days after the First Commitment Date
38 ("Second Commitment Date"), secure the Required Commitment for Buyer upon the same terms, and may extend the Closing Date by 30 business
39 days. The Required Commitment may be given by Seller or a third party. Buyer shall furnish all requested credit information, sign customary
40 documents relating to the application and securing of the Required Commitment, and pay one application fee as directed by Seller. Should Seller
41 choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the Earnest
42 Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the
43 Required Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract
44 shall be null and void and the Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment
45 Date, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and~~ effect.

46 6. **Possession.** Seller agrees to surrender possession of the Property on or before the Closing Date (as defined in Paragraph 7 below). If
47 possession is not delivered on or prior to the Closing Date, then, Seller shall pay to Buyer at Closing $_____ per day ("*Use/Occupancy
48 *Payments*") for Seller's use and occupancy of the Property for each day after the Closing Date through and including the date Seller plans to deliver
49 possession to Buyer ("*Possession Date*"). If Seller delivers possession of the Property to Buyer prior to the Possession Date, Buyer shall refund the
50 portion of Use/Occupancy Payments which extend beyond the date possession is actually surrendered. Additionally, Seller shall deposit with
51 Escrowee a sum equal to 2% of the Purchase Price ("*Possession Escrow*") to guarantee possession on or before the Possession Date, which sum shall
52 be held from the net proceeds at Closing on Escrowee's form of receipt. If Seller does not surrender the Property on the Possession Date, Seller shall
53 pay to Buyer, in addition to all Use/Occupancy Payments, the sum of 10% of the original amount of the Possession Escrow per day up to and
54 including the day possession is surrendered to Buyer plus any unpaid Use/Occupancy Payments up to and including the date possession is
55 surrendered, these amounts to be paid out of the Possession Escrow and the balance, if any, to be returned to Seller. Acceptance of payments by
56 Buyer shall not limit Buyer's other legal remedies. Seller and Buyer hereby acknowledge that Escrowee shall not distribute the Possession Escrow
57 without the joint written direction of Seller and Buyer. If either Party objects to disposition of the Possession Escrow, then Escrowee may deposit the
58 Possession Escrow with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee shall be reimbursed from
59 the Possession Escrow for all costs, including reasonable attorneys' fees, related to the filing of the Interpleader, and the Parties shall indemnify and
60 hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses.

61 7. **Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of the Final Earnest money, plus or minus prorations and
62 escrow fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to Buyer at "*Closing*". Closing shall occur on or prior to
63 **May 31**_____, 20**13** at a time and location mutually agreed upon by the Parties ("*Closing Date*"). Seller must provide Buyer with good and
64 merchantable title prior to Closing.

Buyer Initials: **FC**  Buyer Initials:_____          Seller Initials: [signed]  Seller Initials:_____

1 of 4

65  8. **Deed.** At Closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed
66  ("*Deed*") (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any:
67  covenants, conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; existing leases and tenancies,
68  if any; all special governmental taxes or assessments confirmed and unconfirmed; and general real estate taxes not yet due and payable at the time of
69  Closing.

70  9. **Real Estate Taxes.** Seller represents that the 20 12   general real estate taxes were $ 29,927        . General real estate taxes for the
71  Property are subject to the following exemptions (*check box if applicable*): ☐ Homeowner's. ☐ Senior Citizen's. ☐ Senior Freeze. General real
72  estate taxes shall be prorated based on (i) 100     % of the most recent ascertainable full year tax bill, or (ii) mutually agreed by the Parties in
73  writing prior to the expiration of the Attorney Approval Period.

74  10. **Leases.** Seller shall deliver to Buyer a complete copy of all existing leases affecting the Property and a rent roll within 3 business days of the
75  Acceptance Date. Seller represents and warrants that (a) existing leases, if any, will be assigned to Buyer at Closing in an assignment and
76  assumption agreement mutually agreeable to the Parties and (b) the present monthly gross rental income is $_____
77  Seller shall notify Buyer, prior to Closing, of any (i) new leases; (ii) modifications or amendments to the existing leases; and (iii) changes in the
78  monthly gross rental income.

79  11. **Disclosures.** Buyer has received the following (*check yes or no*): (a) Residential Real Property Disclosure Report: ☐ Yes/☐ No; (b) Heat
80  Disclosure: ☐ Yes/☐ No; (c) Lead Paint Disclosure and Pamphlet: ☐ Yes/☐ No; (d) Radon Disclosure and Pamphlet: ☐ Yes/☐ No; and (e) Zoning
81  Certification: ☐ Yes/☐ No.

82  12. **Zoning Certification.** If the Property is located in the City of Chicago and contains four dwelling units or less, Seller shall provide zoning
83  certification to Buyer at least 5 days prior to the Closing Date.

84  13. **Dual Agency.** The Parties confirm that they have previously consented to ____N/A____ ("*Licensee*") to act as Dual
85  Agent in providing brokerage services on behalf of the Parties and specifically consent to Licensee acting as Dual Agent on the transaction covered by
86  this Contract.
87  Buyer Initials:_____  Buyer Initials:_____  Seller Initials:_____  Seller Initials:_____

88  14. **Attorney Modification.** Within 5   business days after the Acceptance Date ("*Attorney Approval Period*"), the Parties' respective attorneys
89  may propose written modifications to this Contract ("*Proposed Modifications*") on matters other than the Purchase Price, broker's compensation
90  and dates. Any Proposed Modifications that are set forth in writing and accepted by the other party shall become terms of this Contract as if
91  originally set forth in this Contract. If, within the Attorney Approval Period, the Parties cannot reach agreement regarding the Proposed
92  Modifications, then, at any time after the Attorney Approval Period, either Party may terminate this Contract by written notice to the other Party. In
93  that event, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. IN THE ABSENCE OF DELIVERY OF
94  PROPOSED MODIFICATIONS PRIOR TO THE EXPIRATION OF THE ATTORNEY APPROVAL PERIOD, THIS PROVISION SHALL BE
95  DEEMED WAIVED BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.

96  15. **Inspection.** Within 5   business days after the Acceptance Date ("*Inspection Period*"), Buyer may conduct, at Buyer's sole cost and expense
97  (unless otherwise provided by law) home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless separately waived), wood
98  infestation, and/or mold inspections of the Property ("*Inspections*") by one or more properly licensed or certified inspection personnel (each, an
99  "*Inspector*"). The Inspections shall include only major components of the Property, including, without limitation, central heating, central cooling,
100 plumbing, well, and electric systems, roofs, walls, windows, ceilings, floors, appliances, and foundations. A major component shall be deemed to be in
101 operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a health or safety threat. Buyer
102 shall indemnify Seller from and against any loss or damage to the Property or personal injury caused by the Inspections, Buyer, or Buyer's Inspector.
103 Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in writing ("*Buyer's Inspection Notice*") of any defects
104 disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the relevant Inspections report. Buyer
105 agrees that minor repairs and maintenance costing less than $250 shall not constitute defects covered by this Paragraph. If the Parties have not
106 reached written agreement resolving the inspection issues within the Inspection Period, then either Party may terminate this Contract by written
107 notice to the other Party. In the event of such notice, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. *IN THE*
108 *ABSENCE OF WRITTEN NOTICE PRIOR TO EXPIRATION OF THE INSPECTION PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED*
109 *BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.*

110 16. **General Provisions and Riders.** THIS CONTRACT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY
111 BUYER AND SELLER AND DELIVERED TO BUYER OR BUYER'S DESIGNATED AGENT. THIS CONTRACT INCLUDES THE GENERAL
112 PROVISIONS ON THE LAST PAGE OF THIS CONTRACT AND RIDERS _____ (*list Rider numbers here*) AND
113 ADDENDUM _____ (*list Addendum numbers here*) ATTACHED TO AND MADE A PART OF THIS CONTRACT.

[SIGNATURE PAGE FOLLOWS]

*[Handwritten:]* Buyer shall pay seller $32,000.00 at closing and there shall be no credits, debits or proportions for rent or security deposits or anything else; and the Buyer shall pay all title charges and other closing costs.

Buyer Initials: FC   Buyer Initials:_____        2 of 4        Seller Initials: A   Seller Initials:_____

114  OFFER DATE: 4/29 _____ 20 13 ___

115  BUYER'S INFORMATION:
116  Buyer's Signature: JAB Real Estate Inc
117  Buyer's Signature: _____, its Vice President
118  Buyer's Name(s) (print): _____
119  Address: 1800 West Berenice Suite 200
120  City: Chicago    State: IL    Zip: 60613
121  Office Phone: 773 472 9600    Home Phone: _____
122  Fax: _____    Cell Phone: _____
123  Email Address: _____

124  The names and addresses set forth below are for informational purposes
125  to change.

126  BUYER'S BROKER'S INFORMATION:

127  Designated Agent (print): _____
128  Agent Identification Number: _____
129  Broker Name: _____    MLS #: _____
130  Office Address: _____
131  City: _____    State: _____    Zip: _____
132  Office Phone: _____    Cell Phone: _____
133  Fax: _____
134  Email: _____

135  BUYER'S ATTORNEY'S INFORMATION:

136  Attorney Name: Joseph Palmisano
137  Firm: _____
138  Office Address: 19 S LaSalle Ste 900
139  City: Chicago    State: IL    Zip: 60603
140  Office Phone: 312-782-3967    Cell Phone: _____
141  Fax: _____
142  Email: josephpalm@aol.com

143  BUYER'S LENDER'S INFORMATION:

144  Mortgage Broker's Name: _____
145  Lender: _____
146  Office Address: _____
147  City: _____    State: _____    Zip: _____
148  Office Phone: _____    Cell Phone: _____
149  Fax: _____
150  Email: _____

ACCEPTANCE DATE: 4/29 ___ 20 13 ("Acceptance Date")

SELLER'S INFORMATION:
Seller's Signature: _____
Seller's Signature: Kevin L Winter(?)
Seller's Name(s) (print): Kevin H. Jackson
Address: 3023 N. Clark St #315
City: Chicago    State: IL    Zip: 60657
Office Phone: _____    Home Phone: _____
Fax: _____    Cell Phone: _____
Email Address: _____

The names and addresses set forth below are for informational purposes only and subject only and subject to change.

SELLER'S BROKER'S INFORMATION:

Designated Agent Name (print): _____
Agent Identification Number: _____
Broker Name: _____    MLS #: _____
Office Address: _____
City: _____    State: _____    Zip: _____
Office Phone: _____    Cell Phone: _____
Fax: _____
Email: _____

SELLER'S ATTORNEY'S INFORMATION:

Attorney Name: Robert C. Griffin
Firm: _____
Office Address: 849 W Fletcher St
City: Chicago    State: IL    Zip: 60657
Office Phone: _____    Cell Phone: _____
Fax: _____
Email: _____

Buyer Initials: ___  Buyer Initials: ___   3 of 4   Seller Initials: ___  Seller Initials: ___

151 **GENERAL PROVISIONS**

152   A.   **Prorations.** Rents, interest on existing mortgage, if any, water taxes and other items shall be prorated as of the Closing Date. Security deposits and required interest, if
153 any, shall be paid to Buyer at Closing. Notwithstanding anything to the contrary contained in Paragraph 9 of this Contract, if the Property is improved as of the Closing Date, but the
154 last available tax bill is on vacant land, Seller shall place in escrow an amount equal to 2% of the Purchase Price and the Parties shall reprorate taxes within 30 days after the bill on
155 the improved property becomes available.

156   B.   **Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

157   C.   **Title.** At least 5 days prior to the Closing Date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a
158 Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other
159 exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance
160 due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller
161 shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and
162 notify Buyer accordingly. As to those exceptions that may be removed at Closing by payment of money, Seller may have those exceptions removed at Closing by using the proceeds of
163 the sale.

164   D.   **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The
165 mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery or
166 commercial delivery service, by mail-o-gram, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by
167 regular mail on the date of transmission. In addition, facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this Contract. E-mail notices shall be
168 deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient
169 on the date of transmission.

170   E.   **Disposition of Earnest Money.** In the event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to Seller. If Seller
171 defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract. In the event of any
172 default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request Seller's and Buyer's written consent to the
173 Escrowee's intended disposition of the Earnest Money within 30 days after the notice. However, Seller and Buyer acknowledge and agree that if Escrowee is a licensed real estate
174 broker, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. If Escrowee is not a licensed real estate
175 broker, Seller and Buyer agree that if neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then Escrowee shall
176 proceed to dispense the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30 day period, or if Escrowee is a
177 licensed real estate broker and does not receive the joint written direction of Seller and Buyer authorizing distribution of the Earnest Money, then the Escrowee may deposit the
178 Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee may be reimbursed from the Earnest Money for all costs,
179 including reasonable attorney's fees, related to the filing of the Interpleader and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the
180 payment of reasonable attorneys' fees, costs, and expenses arising out of those claims and demands.

181   F.   **Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in
182 working order and will be so at the time of Closing and that the roof is free of leaks and will be so at the time of Closing. Buyer shall have the right to enter the Property during the 48-
183 hour period immediately prior to Closing solely for the purpose of verifying that the operational systems and appliances serving the Property are in working order and that the Property
184 is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

185   G.   **Insulation Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the
186 Federal Trade Commission, and Rider 13 is attached.

187   H.   **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property
188 has been issued and received by Seller or Seller's agent ("*Code Violation Notice*"). If a Code Violation Notice is received after the Acceptance Date and before Closing, Seller shall
189 promptly notify Buyer of the Notice.

190   I.   **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an escrow with a
191 title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company,
192 with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and
193 delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with
194 regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

195   J.   **Survey.** At least 5 days prior to the Closing Date, Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of
196 Closing, showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's expense.

197   K.   **Affidavit of Title; ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by
198 Buyer's mortgagee, or the title insurance company, for extended coverage.

199   L.   **Legal Description.** The Parties may amend this Contract to attach a complete and correct legal description of the Property.

200   M.   **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of
201 1974, as amended.

202   N.   **1031 Exchange.** The Parties agree that at any time prior to the Closing Date, Buyer and/or Seller may elect to effect a simultaneous or non-simultaneous tax-deferred
203 exchange pursuant to Section 1031, and the regulations pertaining thereto, of the Internal Revenue Code, as amended. Each party expressly agrees to cooperate with the other party in
204 connection with any such exchange in any manner which shall not impose any additional cost or liability upon the cooperating party, including without limitation by executing any
205 and all documents, including escrow instructions or agreements consenting to the assignment of any rights and obligations hereunder to an exchange entity, which may be necessary to
206 carry out such an exchange; provided, however, that any election to effect such an exchange shall not delay the Closing Date.

207   O.   **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by
208 Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by
209 any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

210   P.   **Removal of Personal Property.** Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill of Sale to
211 Buyer.

212   Q.   **Surrender.** Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted, subject to
213 Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that portion of the total cost
214 related to this violation that is below $250.00.

215   R.   **Time.** Time is of the essence for purposes of this Contract.

216   S.   **Number.** Wherever appropriate within this Contract, the singular includes the plural.

217   T.   **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

218   U.   **Business Days and Time.** Any reference in this Contract to "day" or "days" shall mean business days, not calendar days, including Monday, Tuesday, Wednesday,
219 Thursday, and Friday, and excluding all official federal and state holidays.

220   V.   **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by
221 Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction
222 pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction
223 directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and
224 hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or
225 related to any breach of the foregoing representation and warranty.

226   W.   **Brokers.** The real estate brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation
227 made by the listing broker in a multiple listing service in which the listing and cooperating broker both participate.

228   X.   **Original Executed Contract.** The listing broker shall hold the original fully executed copy of this Contract.

Buyer Initials: _FC_  Buyer Initials: _____    Seller Initials: _____  Seller Initials: _____