# EXHIBIT D

Attorney Code #34089

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

HALSTED INVESTMENT PARTNERS, LLC )
An limited liability company, )

      Plaintiff, )

      vs. )    No.

NORTHBROOK LOANS, LLC, an )
Illinois limited liability company, )

      Defendant. )

## VERIFIED COMPLAINT
## FOR SPECIFIC PERFORMANCE AND OTHER RELIEF

NOW COMES the Plaintiff HALSTED INVESTMENT PARTNERS, LLC, by

and through its attorneys, Brown, Udell, Pomerantz & Delrahim, Ltd., and for its Verified

Complaint For Specific Performance and Other Relief (the "Complaint"), against

Defendant, NORTHBROOK LOANS, LLC, hereby alleges as follows:

### PARTIES

1.      Plaintiff is an Illinois limited liability company authorized to do business

in Cook County, Illinois.

2.      On information and belief, Defendant is an Illinois limited liability

company with its principal place of business located in Cook County, Illinois.

3.      At all times relevant hereto Defendant is the note holder for two (2)

adjoining parcels of land:

PARCEL 1:
LOTS 8, 9 AND 10 TAKEN AS A TRACT (EXCEPT IN THE NORTH 38 FEET
THEREOF) IN W.J. HAERTHER'S NORTH SHORE ADDITION IN PINE GROVE, A
SUBDIVISION OF FRACTIONAL SECTION 21, TOWNSHIP 40 NORTH, RANGE 14
EAST OF THE THIRD PRINICPAL MERIDIAN, MAP OF WHICH ADDITION WAS
RECORDED SPETEMBER 22, 1892 IN BOOK 56 OF PLATS, PAGE 32, IN COOK
COUNTY, ILLINOIS.

Permanent Tax Index #: 14-21-308-069-000

Commonly known as: 3335-37 North Halsted Street, Chicago, IL 60657 ("Parcel 1")

PARCEL 2:

THE NORTH 38 FEET OF LOTS 8, 9, AND 10, TAKEN AS A TRACT, IN W.J. HAERTHER'S NORTH SHORE ADDITION IN PINE GROVE, A SUBDIVISION OF FRACTIONAL SECTION 21, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINICPAL MERIDIAN, MAP OF WHICH ADDITION WAS RECORDED SPETEMBER 22, 1892 IN BOOK 56 OF PLATS, PAGE 32, IN COOK COUNTY, ILLINOIS.

Permanent Tax Index #: 14-21-308-070-000

Commonly known as: 3339-41 North Halsted Street, Chicago, IL 60657 ("Parcel 2")

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over Defendant because Defendant resides in, and transacts business in, Cook County, Illinois.

5.      Venue is proper in this Court as the acts complained of herein occurred in Cook County, Illinois, and this case pertains to real property located in Cook County, Illinois.

### FACTS

6.      On or about May 1, 2012, Wells Street Companies ("WSC"), as Buyer, and Defendant, as Seller, entered into that certain Real Estate Option Agreement (the "Contract") for WSC's purchase of Parcel 1 and Parcel 2. A true and correct copy of the Contract is attached hereto as Exhibit "A".

7.      On May 2, 2013, WSC recorded a copy of the Contract with the Cook County Recorder of Deeds as document No. 1312216077.

8.      On July 17, 2013, Plaintiff and WSC entered into an Assignment and Assumption Agreement whereby WSC assigned its rights and obligations under the Contract to Plaintiff. A true and correct copy of the Assignment and Assumption Agreement is attached hereto as Exhibit "B".

9.     Pursuant the Contract and the attorney modification letters incorporated therein, Defendant did not yet have title to Parcel 1 and Parcel 2, but, as the note holder for both parcels, would attempt to obtain title to both Parcel 1 and Parcel 2 so through the foreclosure process. *See* Ex. A.

10.     Despite Defendant's obligation under the Contract to take all necessary steps to obtain Parcel 1 and Parcel 2, respectively, through the foreclosure process, Defendant has failed to do so.

## SPECIFIC PERFORMANCE

11.     Defendant has breached the Contract by failing to perform Defendant's obligations, including its implied good faith obligation to use all reasonable efforts to obtain Parcel 1 and Parcel 2 through the foreclosure process.

12.     Plaintiff and its predecessor in interest have performed and satisfied all obligations and acts required to be performed by it in furtherance of purchasing Parcel 1 and Parcel 2 except those that Defendant's actions prevented Plaintiff from performing.

13.     At all relevant times, Plaintiff and its predecessor in interest have been, and remain ready, willing and able to fulfill Plaintiff's obligations under the Contract and has demanded that Defendant comply with the terms of the Contract.

14.     Defendant has, in contravention of the Contract, refused to advance the foreclosure actions for Parcel 1 and Parcel 2, respectively, and as a result, refuses to close on the transaction contemplated by the Contract.

15.     As a direct result of Defendants actions, the Defendant has breached the Contract made with the Plaintiff's predecessor in interest, and therefore is in default of the Contract.

16.     Despite requests and demands made by Plaintiff and its predecessor in interest, Defendant has refused to do those other acts required of it in furtherance of

foreclosure of Parcel 1 and Parcel 2, respectively, leading to the sale of the Property to Plaintiff.

17.     Defendant's conduct is in breach of its obligations under the Contract and those implied by law.

18.     Plaintiff has no adequate remedy at law to remedy Defendant's failure to fully pursue the foreclosure of Parcel 1 and Parcel 2 pursuant to the Contract.

19.     The property is uniquely suited to Plaintiff's needs and purposes.

20.     By reason of the foregoing, Plaintiff is entitled to the remedy of specific performance of the Contract.

21.     Defendant's conduct has been willful and vexatious, and engaged in with the affirmative intention of breaching the Contract.

22.     By reason of such conduct, Plaintiff is also entitled to the recovery from Defendant of its attorneys' fees and expenses incurred in enforcing the Contract by this action.

WHEREFORE, Plaintiff prays for the entry of a judgment order or orders:

1.     Finding that Plaintiff and its predecessor in interest have performed those acts required to be performed of it by the Contract.

2.     Finding that Defendant has unlawfully failed to perform those acts required to be performed by it pursuant to the Contract, and has acted willfully and vexatiously in so failing to perform its obligations under the Contract.

3.     Ordering Defendant to perform those acts necessary to obtain title to Parcel 1 and Parcel 2 and close the sale of the Parcels pursuant to the Contract, including without limitation the conveyance of title to Plaintiff as required by the Contract.

4.     Granting to Plaintiff, and against Defendant, an award of Plaintiff's attorneys' fees and expenses reasonably incurred in enforcing Plaintiff's rights under the Contract.

5.     Granting to Plaintiff, and against Defendant, an award of Plaintiff's taxable costs incurred herein.

6.     Granting to Plaintiff such other and additional temporary and final relief as the Court deems just and equitable under the circumstances.

HALSTED INVESTMENT PARTNERS, LLC

By: _____
    One of Plaintiff's Attorneys

Glenn L. Udell
Glenn M. Kanter
BROWN, UDELL, POMERANTZ & DELRAHIM, LTD.
1332 North Halsted Street, Suite #100
Chicago, Illinois 60642
Tel: (312) 475-9900, Fax: (312) 475-1188
Attorney No. 34089

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned is the Plaintiff in this action, does hereby certify that the statements set forth in the foregoing Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

HALSTED INVESTMENT PARTNERS, LLC, an Illinois limited liability company

By: Wells Street Equities, LLC
Its: Manager

Dated: September 18, 2013

By: Arthur Holmer, Manager

# EXHIBIT A



Doc#:  1312216077 Fee: $70.00
RHSP Fee:$10.00 Affidavit Fee:
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 05/02/2013 04:25 PM  Pg:  1 of 17

FOR RECORDER'S USE

## CHICAGO ASSOCIATION OF REALTORS APARTMENTS/INVESTMENTS PURCHASE AND SALE CONTRACT

Parties:      By and between Owner of Record Northbrook Loans, LLC (Seller)
and Wells Street Companies, Inc. (Buyer)

Property Address:   3335-37 North Halsted Street, Chicago, IL  60657 and
3339-41 North Halsted Street, Chicago, IL  60657

ATTACHMENTS TO THIS COVER PAGE INCLUDE – May 17, 2012 Michael J. Goldstein & Associates, Ltd. Attorney Modification Letter, May 14, 2012 Gussis Law Group LLC Attorney Modification Letter with Form of Estoppel and Chicago Association of Realtors Apartments/Investments Purchase and Sale Contract with Rider attached, Exhibit A Legal Descriptions

Cook County Recorder's Office.  Please record the attached document(s). Thank you.

Prepared by and Mail to:     Glenn L. Udell
Brown, Udell, Pomerantz & Delrahim, Ltd.
1332 North Halsted Street, Suite 100
Chicago, Illinois  60642

## EXHIBIT A - LEGAL DESCRIPTION

LOTS 8, 9 AND 10 TAKEN AS A TRACT (EXCEPT THE NORTH 38 FEET THEREOF) IN
W.J. HAERTHER'S NORTH SHORE ADDITION IN PINE GROVE, A SUBDIVISION OF
FRACTIONAL SECTION 21, TOWHSIP 40 NORTH, RANGE 14 EAST OF THE THIRD
PRINCIPAL MERIDIAN, MAP OF WHICH ADDITION WAS RECORDED SEPTEMBER
22, 1892 IN BOOK 56 OF PLATS, PAGE 32, IN COOK COUNTY, ILLINOIS.

PIN:   14-21-308-069-0000
Commonly known as:  3335-37 North Halsted Street, Chicago, IL  60657

THE NORTH 38 FEET OF LOTS 8, 9, AND 10, TAKEN AS A TRACT, IN W.J. HAERTHER'S NORTH SHORE
ADDITION IN PINE GROVE, A SUBDIVISION OF FRACTIONAL SECTION 21, TOWNSHIP 40 NORTH,
RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIN, MAP OF WHICH ADDITION WAS RECORDED
SEPTEMBER 22, 1892 IN BOOK 56 OF PLATS, PAGE 32, IN COOK COUNTY, ILLINOIS

PIN:   14-21-308-070-0000
Commonly known as:  3339-41 North Halsted Street, Chicago, IL  60657

 **Michael J. Goldstein & Associates, Ltd.**
Attorneys & Counselors at Law

May 17, 2012

Lloyd Gussis, Esq.
Gussis Law Group, LLC
6200 North Hiwatha Avenue
Suite 400
Chicago, Illinois 60646

*SENT VIA REGULAR U.S. MAIL & EMAIL: lloydgussis@msn.com*

Re:    3335-37 N. Halsted and 3339-41 N. Halsted, Chicago, IL

Dear Lloyd:

This letter is in response to yours dated May 14, 2012, proposing certain modifications on behalf of the Purchaser to the contract. Be advised as follows:

1.    Seller agrees with paragraph 1 of your letter.

2.    Seller agrees with paragraph 2 of your letter.

3.    Seller agrees with paragraph 3 of your letter.

4.    Seller agrees with paragraph 4(a) and paragraph 4(b) of your letter.

5.    With regard to paragraph 5 of your letter, the Seller is not in control of either building at this time. Seller cannot represent that it will be able to provide the Buyer with an estoppel letter for each commercial tenant of the buildings.

6.    Seller agrees with paragraph 6(a) of your letter. However, Seller does not agree with paragraph 6(b) of your letter. This is because the Seller does not wish to become obligated to Purchaser to pursue tenants for the closing month's rent after closing. In addition, the contract should clarify that claims for unpaid rents due for periods prior to closing are the property of Seller.

7.    Seller agrees with paragraph 7 of your letter.

Lloyd Gussis
May 17, 2012
Page No. 2

8.    Seller agrees with paragraph 8 of your letter, subject to the time for providing the requested documentation being extended to ten (10) business days.

9.    Seller agrees with paragraph 9 of your letter.

10.    Seller agrees with paragraph 10 of your letter.

11.    Seller agrees with paragraph 11 of your letter.

12.    Seller agrees with paragraph 12 of your letter.

13.    Seller does not agree with paragraph 13 of your letter.

14.    Seller agrees with paragraph 14 of your letter with this modification:  Seller does not yet have *title* to either building, and so the contract must be contingent on Seller acquiring title to both properties.

If you have any questions or comments, please do not hesitate to communicate with me.

Yours very truly,

MICHAEL J. GOLDSTEIN & ASSOCIATES, LTD.

Michael J. Goldstein

MJG:bb

Approved:

## GUSSIS LAW GROUP LLC
### 6200 NORTH HIAWATHA AVENUE, SUITE 400
### CHICAGO, ILLINOIS 60646

LLOYD E. GUSSIS
DIRECT: 773-525-8036
FACSIMILE: 773-975-0944
LLOYDGUSSIS@MSN.COM

May 14, 2012

SAMUEL P. GUSSIS
DIRECT: 773-685-6920
FACSIMILE: 773-685-6740
SGUSSIS@GUSSISLAWGROUP.COM

Mr. Michael J. Goldstein, Esq.
Michael J. Goldstein & Associates Ltd.
17 North State Street
Suite 990
Chicago, Illinois  60602

RE: 3335-37 North Halsted and
3339-41 North Halsted
Chicago, Illinois

Dear Mr. Goldstein:

Please be advised that the undersigned represents Wells
Street Companies, Inc., the contract purchaser of the above
entitled real estate. Pursuant to paragraph 14 of the Purchase
and Sale Contract (the "Contract"), I am writing to advise you of
my proposed modifications thereto.

The following are my proposed modifications to the Contract:

1. In the event that the parties are unable to finalize
agreement as to (i) the proposed attorney modifications and/or
(ii) any inspection issues within the time period(s) set forth in
the Contract, the period(s) set forth in the Contract shall be
extended until such time as the parties have reached written
agreement with respect to such issues, agree that the parties are
unable to reach agreement with respect to such issues or one
party reasonably believes that agreement can not be reached with
respect to such issues and so notifies the other party thereof in
writing.

2. It is agreed by the undersigned that the provisions of
this letter will control in the event of a conflict with the
provisions of the Contract.

3. The parties agree that for all relevant purposes the date
of acceptance of the Contract shall be May 1, 2012.

4. With reference to paragraph 8:

a. Buyer agrees to accept title to the real estate
subject to covenants, conditions and restrictions of record,
provided that the same do not interfere with or otherwise re-
strict the current use of the real estate.

b. The following item shall be deleted: "all special

1

governmental taxes or assessments confirmed and unconfirmed."

5. With reference to paragraph 10, at closing Seller shall provide Buyer with an Estoppel Letter for each commercial tenant in the buildings in the form attached hereto as Exhibit "A".

6. With reference to paragraph A of the General Provisions:

a. The parties agree that at the time of closing, Seller shall give Buyer a credit for the security deposit for each tenant, as set forth on each respective lease or certified rent roll, plus accrued interest thereon, and shall not use or apply any security deposit for delinquent rent of any tenant;

b. Rents shall be prorated at closing based on rents actually collected by the Seller for the month in which the closing occurs. Any rent for the month of closing which is due but not yet collected shall not be prorated, but rather the parties will use their respective best efforts after the date of closing to collect such rent, and upon collection of same, shall be prorated between the parties.

7. With reference to paragraph C of the General Provisions, Seller agrees that he shall obtain extended coverage over the general exceptions contained in the title commitment.

8. Seller agrees to provide Buyer, within five (5) business days of the date of acceptance hereof, with (i) a certified rent roll (setting forth the name of each tenant, the monthly rent, security deposit, and if there is a written lease for such tenant, and if so, the term of the lease, or if not, whether such tenancy is month to month); (ii) laundry room leases, if any; (iii) management agreements, if any; and (iv) all contracts or agreements which in any way affect the operation of the real estate. This Contract is contingent upon the review and approval of said documentation by Buyer within four (4) business days from the date of receipt of said documentation by Buyer.

9. Seller agrees that between the date hereof and the date of closing, he shall not enter into any additional leases or tenancies without the prior written approval of the Buyer.

10. This Contract shall be contingent upon Seller delivering to Buyer zoning certifications from the City of Chicago evidencing that there are four (4) legal dwelling units in each of the buildings.

11. With reference to paragraph J of the General Provisions, the survey to be provided by Seller for each property shall be an ALTA survey and shall evidence that there are no encroachments or violations of any building line which can not be "insured" by the

title insurer for the owners policy of title insurance.

12. With reference to paragraph O of the General Provisions, the City of Chicago transfer stamps shall be paid as follows: $7.50/$1,000.00 in purchase price by Buyer and $3.00/$1,000.00 in purchase price by Seller.

13. With reference to paragraph Q of the General Provisions, the last sentence thereof shall be deleted.

14. With reference to Rider A:

a. The parties acknowledge and agree that the contract is for the purchase and sale of two buildings, being (i) 3335-37 North Halsted, Chicago, Illinois; and (ii) 3339-41 North Halsted, Chicago, Illinois.

b. Buyer acknowledges that Seller does not yet have title to the 3339-41 North Halsted, Chicago, Illinois building. The contract is contingent upon Seller acquiring title to said real estate and simultaneously closing on both properties.

c. Seller agrees to give Buyer written notice of the date of the sheriff sale for 3339-41 North Halsted, Chicago, Illinois. Notwithstanding anything to the contrary contained herein, Buyer shall have the right to attend said sheriff sale and in the event that there is a bid on the property in excess of the Seller's bid, Buyer shall have the right to also bid on the property. In the event that the Buyer is the highest bidder at the sheriff's sale, the parties will then close on the purchase and sale of 3335-37 North Halsted, Chicago, Illinois, as set forth in the contract, with the purchase price reduced by the amount of Buyer's successful bid at the sheriff's sale for 3339-41 North Halsted.

d. The parties agree that in the event that both the Seller and the Buyer fail to acquire title to the 3339-41 North Halsted property, the contract shall be null and void and Buyer shall be entitled to the return of its earnest money deposit.

The above modifications shall in not be construed as a counter-offer, but rather as suggested modifications of the Contract which the Buyer reserves the right to withdraw, in whole or in part, if not agreed to by the Seller.

If your client is in agreement with the foregoing modifications, please sign and return a copy of this letter to me.

If your client does not agree with these modifications, please contact me at your earliest convenience so that we might discuss these issues and attempt to resolve them in a manner

3

satisfactory to the parties.

Very truly yours,

Lloyd B. Gussis

leg/em
cc: Wells Street Companies, Inc.

VIA FACSIMILE AND REGULAR MAIL

MODIFICATIONS APPROVED: The undersigned, as attorney of record,
has the authority to bind his client to the foregoing modifica-
tions to the Contract and hereby approves same.

_____
Attorney for Seller

4

<u>Form of Estoppel</u>

**ESTOPPEL CERTIFICATE**

To:    [Name of Buyer]

       c/o_____

       _____

       _____

       Attn:_____

Property Address:

The undersigned tenant (the "tenant") hereby certifies to you as follows:

(1)    tenant is the tenant at the Property under a lease for the Property dated _____, (the "Lease") with _____ (the "Landlord"), containing _____ square feet; such lease has not been canceled, modified, extended or amended by any amendment, letter, or other written or oral agreement or understanding, except as stated above.

(2)    Landlord has timely completed all of its obligations under the Lease, including without limitation, those relating to construction of the Property, and has paid tenant all allowances and other amounts (if any) due to tenant under the Lease, except as hereinafter otherwise specified, and tenant has no claims against Landlord, except as follows [state "none" if applicable]: _____

(3)    All base rent, rent escalations and additional rent under the Lease and all other amounts due from tenant to Landlord under the Lease have been paid through _____, 20__. There is no prepaid rent, except for the current month, and the amount of security deposit is $_____. The security deposit is cash and no interest accrues or is due thereon. tenant is not entitled to any rental abatement or "free rent" or other offset against rent under the Lease which has not already been received by tenant, except as follows [state "none" if applicable]: _____

Base rent is payable as follows: currently _____ per month, escalating _____% annually commencing _____, and tenant is obligated to pay 100% of the real estate taxes and assessments, insurance, common area maintenance and other operating expenses payable with respect to the Property in monthly installments, as provided under the Lease. Tenant's 100% share of (i) Impositions are currently being paid in the monthly amount of

$_____ and (ii) Common Area Costs are currently being paid in the amount of
_____

(4)    The term of the Lease expires on _____, subject to tenant's early termination right described below.  Except as noted below, tenant has not been granted: (a) any right or option to extend the term of the Lease; (b) any right or option to expand the Property or to lease additional space within the Property; (c) any right of refusal, offer or opportunity on any space at the Property; (d) any right or option to purchase the Property or the Property, or any part thereof; or (e) any right or option to terminate the Lease prior to its stated expiration date or to reduce the size of the Property.  Notwithstanding the foregoing, tenant has the following options of the type described in clauses (a) - (e) above [state "none" if applicable]:
_____

(5)    (a) The Lease is in full force and effect; (b) the Lease is free from breach or default and free from any event by either Landlord or tenant which could become a breach or default under the Lease; and (c) tenant has no claims against the Landlord and tenant has no offsets or defenses against rent or tenant's obligations under the Lease.

(6)    tenant has received no notice and has no knowledge of any prior sale, transfer or assignment, hypothecation or pledge of the Lease or of the rents payable under the Lease, except as follows [state "none" if applicable]:
_____

(7)    tenant has full possession of and tenant is currently occupying the Property, has not assigned the Lease or sublet any part of the Property and does not hold the Property (or any part thereof) under an assignment or sublease, except as follows [state "none" if applicable]:
_____

(8)    Tenant is not insolvent or bankrupt or otherwise unable to pay its debts as they mature.

(9)    Tenant does not own any fixtures or equipment in the Premises, except for tenant's movable trade fixtures, and except for the following items:_____

The undersigned has executed this Estoppel Certificate with the knowledge and understanding that _____, or an affiliate or assignee thereof, is acquiring the Property, n, in reliance on this Estoppel Certificate. Each person signing this Estoppel Certificate for tenant is duly authorized to bind tenant and each person signing this Estoppel Certificate for Guarantor is duly authorized to bind Guarantor.   The statements contained herein may be relied upon by _____, and any affiliates or assignees thereof, and any mortgagee of the Property.

Dated this ____ day of _____, 20__.

B-2

**TENANT:**

_____

By: _____

Title: _____

# CHICAGO ASSOCIATION OF REALTORS®
## APARTMENTS/INVESTMENTS PURCHASE AND SALE CONTRACT

Rev. 01/2005



**1. Contract.** This Apartment/Investments Purchase and Sale Contract ("*Contract*") is made by and between Wells Street Companies or "Assignee" ("*Seller*") and Owner of Record ("*Buyer*") for the purchase and sale of the real estate and improvements located at ("*Property*"), with respect to the purchase and sale of (and, if) (city) (state) (zip) (collectively, "*Parties*"), 3335-37 & 3339-41 N. Halsted, Chicago, IL 60657 (address)

Lot size 80 x 110      Approximate square feet of Property: 19,400

Property P.I.N. #: 14-21-303-069,070)-0008

**2. Fixtures and Personal Property.** At Closing (as defined in Paragraph 7 of this Contract), in addition to the Property, Seller shall transfer to Buyer by a Bill of Sale, all heating, cooling, electrical and plumbing systems, together with the following checked and enumerated items ("Fixtures and Personal Property"):

| | | |
|---|---|---|
| ☑ Refrigerator | ☐ Sump Pump | ☐ Fireplace screen |
| ☐ Oven/Range | ☐ Smoke and carbon monoxide | and equipment |
| ☐ Microwave | detectors | ☐ Fireplace gas log |
| ☐ Dishwasher | ☐ Intercom system | ☐ Firewood |
| ☐ Garbage disposal | ☐ Security system (rented or owned strike one) | ☐ Attached gas grill |
| ☐ Trash compactor | ☐ Satellite Dish | ☐ Existing storms |
| ☐ Washer | ☐ T.V. antenna | and screens |
| ☐ Dryer | ☐ LCD/plasma/multimedia equipment | ☐ Window treatments |
| ☐ Water Softener | ☐ Stereo speakers/surround sound | ☐ Home warranty (see attached) |

☑ Central air conditioner   ☐ Built-in or attached shelves or cabinets
☐ Window air conditioner    ☐ Ceiling fan
☐ Electrostatic air filter   ☐ Radiator covers
☐ Central humidifier        ☐ All planted vegetation
☐ Lighting fixtures         ☐ Outdoor play set/swings
☐ Electronic garage door(s) ☐ Outdoor shed
with    remote unit(s)
☐ Wall-to-wall carpeting

The following items are excluded: N/A

Seller also transfers the following: N/A

**3. Purchase Price.** The purchase price for the Property (including the Fixtures and Personal Property) is $ 3,500,000 ("*Purchase Price*").

**4. Earnest Money.** Upon Buyer's execution of this Contract, Buyer shall deposit with Chicago Title & Trust Company ("*Escrowee*"), Initial earnest money in the amount of $50,000, in the form of Check ("*Initial Earnest Money*"). Initial Earnest Money shall be returned and this Contract shall be of no force or effect if this Contract is not accepted by Seller on or before April 28th, 20 12. This Initial Earnest Money shall be increased to (as established in Paragraph 14 of this Contract) (the Initial and Final Earnest Money are together referred to as the 'Earnest Money'). The Parties acknowledge and agree that (i) the Parties shall execute all necessary documents with respect to the Earnest Money in form and content mutually agreed upon between the parties and (ii) except as otherwise agreed, Buyer shall pay all expenses with respect to the Earnest Money.

**5. Mortgage Contingency.** ~~This Contract is contingent upon Buyer securing by~~

**6. Possession.** Seller agrees to surrender possession of the Property on or before the Closing Date (as defined in Paragraph 7 below). If possession is not delivered at or prior to the Closing Date, then, Seller shall pay to Buyer at Closing $ N/A per day ("*Use/Occupancy Payments*") for Seller's use and occupancy of the Property for each day after the Closing Date through and including the date Seller plans to deliver possession to Buyer ("*Possession Date*"). If Seller delivers possession of the Property to Buyer prior to the Possession Date, Seller shall deposit with Escrowee a sum equal to 2% of the Purchase Price ("*Possession Escrow*") to guarantee possession on or before the Possession Date, Seller shall be held from the net proceeds at Closing on Escrowee's form of receipt. If Seller does not surrender the Property on the Possession Date, Seller shall pay to Buyer, in addition to all Use/Occupancy Payments, the sum of 10% of the original amount of the Possession Escrow per day up to and including the day possession is surrendered to Buyer plus any unpaid Use/Occupancy Payments up to and including the date possession is surrendered, then Seller shall promptly pay these amounts to be paid out of the Possession Escrow and the balance, if any, to be returned to Seller. Acceptance of payments by Buyer shall not limit Buyer's other legal remedies. Seller and Buyer hereby acknowledge that Escrowee shall not distribute the Possession Escrow without the joint written direction of Seller and Buyer. If either Party objects to disposition of the Possession Escrow, then Escrowee shall deposit the Possession Escrow with the Clerk of the Circuit Court by the filing of an action in the nature of an interpleader, and the Parties shall indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses.

**7. Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of the Final Earnest money, plus or minus prorations and escrow fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to Buyer at "*Closing*". Closing shall occur on or prior to See Rider A, 20___ at a time and location mutually agreed upon by the Parties ("*Closing Date*"). Seller must provide Buyer with good and merchantable title prior to Closing.

Buyer Initials _____ Buyer Initials _____            Seller Initials _____ Seller Initials _____

1 of 4

311 OFFER DATE: April 23rd                          20 12

ACCEPTANCE DATE: _____ 20__ ("Acceptance Date")

115 BUYER'S INFORMATION:

116 Buyer's Signature: _____

117 Buyer's Signature: _____

118 Buyer's Name(s): Jointly   Arthur Holmer   Wells Street Companies or Assignee

119 Address: 343 W. Erie, Suite 420

120 City: Chicago      State: IL      Zip: 60654

121 Office Phone: 312-274-0533      Home Phone: _____

122 Fax: 312-276-4711      Cell Phone: _____

123 Email Address: arthur.holmer@wellscompanies.com

124 The names and addresses set forth below are for informational purposes
125 in change.

126 BUYER'S BROKER'S INFORMATION:

127 Designated Agent (print): _____

128 Agent Identification Number: _____

129 Broker Name: _____ MLS #: _____

130 Office Address: _____

131 City: _____ State: _____ Zip: _____

132 Office Phone: _____ Cell Phone: _____

133 Fax: _____

134 Email: _____

135 BUYER'S ATTORNEY'S INFORMATION:

136 Attorney Name: _____

137 Firm: _____

138 Office Address: _____

139 City: _____ State: _____ Zip: _____

140 Office Phone: _____ Cell Phone: _____

141 Fax: _____

142 Email: _____

143 BUYER'S LENDER'S INFORMATION:

144 Mortgage Broker's Name: None

145 Lender: _____

146 Office Address: _____

147 City: _____ State: _____ Zip: _____

148 Office Phone: _____ Cell Phone: _____

149 Fax: _____

150 Email: _____

---

SELLER'S INFORMATION:

Seller's Signature: RSR

Seller's Signature: _____

Seller's Name(s) (print): Northbrook Loans, LLC

Address: 500 Skokie Blvd. Suite 250

City: Northbrook      State: IL      Zip: 60062

Office Phone: 847-557-1002      Home Phone: _____

Fax: _____

Email Address: bshibe@diagrp.com

The names and addresses set forth below are for informational purposes only and subject to change.

SELLER'S BROKER'S INFORMATION:

Designated Agent Name (print): _____

Agent Identification Number: _____

Broker Name: _____ MLS #: _____

Office Address: _____

City: _____ State: _____ Zip: _____

Office Phone: _____ Cell Phone: _____

Fax: _____

Email: _____

SELLER'S ATTORNEY'S INFORMATION:

Attorney Name: _____

Firm: _____

Office Address: _____

City: _____ State: _____ Zip: _____

Office Phone: _____ Cell Phone: _____

Fax: _____

Email: _____

## GENERAL PROVISIONS

**A.** Prorations. Rents, interest on existing mortgage, if any, water taxes and other items shall be prorated as of the Closing Date. Security deposits and required interest, if any, shall be paid to Buyer at Closing. Notwithstanding anything to the contrary contained in Paragraph 2 of this Contract, if the Property is improved as of the Closing Date, but the last available tax bill is on vacant land, Seller shall place in escrow an amount equal to 2% of the Purchase Price and the Parties shall reprorate taxes within 30 days after the bill on the improved property becomes available.

**B.** Uniform Vendor and Purchaser Risk Act. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

**C.** Title. At least 5 days prior to the Closing Date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company issuing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at Closing by payment of money, Seller may have those exceptions removed at Closing by using the proceeds of the sale.

**D.** Notices. All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notices by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery or commercial delivery service, by email or by fax of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission. In addition, facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this Contract. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission.

**E.** Disposition of Earnest Money. In the event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract. In the event of any default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request Seller's and Buyer's written consent to the disposition. However, Seller and Buyer acknowledge and agree that if Escrowee is a licensed real estate broker, Escrowee's intended disposition of the Earnest Money within 30 days after the notice. If Escrowee is not a licensed real estate broker, Escrowee may not distribute the Earnest Money without the joint written direction of the Earnest Money within 30 days after the date of the notice, then Escrowee shall proceed to dispose the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30 day period or if Escrowee is a licensed real estate broker and does not receive the joint written direction of Seller and Buyer authorizing distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an interpleader. Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the interpleader and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorney's fees, costs and expenses arising out of those claims and demands.

**F.** Operational Systems. Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of Closing and that the roof is free of leaks and will be so at the time of Closing. Buyer shall have the right to enter the Property during the 48-hour period immediately prior to Closing solely for the purpose of verifying that the operational systems and appliances serving the Property are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

**G.** Insulation Disclosure Requirements. If the Property is new construction, Buyer and Seller shall comply with all insulating disclosure requirements as provided by the Federal Trade Commission, and Rider 13 is attached.

**H.** Code Violations. Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("Code Violation Notice"). If a Code Violation Notice is received after the Acceptance Date and before Closing, Seller shall promptly notify Buyer of the Notice.

**I.** Escrow Closing. At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company consistent with the terms of this Contract. Upon the creation of an escrow, payment of Purchase Price and with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, anything in this Contract to the contrary notwithstanding, payment of Purchase Price and delivery of deed shall be made through the escrow and this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with the right to compel payment of the Broker's commission. The cost of the escrow shall be divided equally between Buyer and Seller.

**J.** Survey. At least 5 days prior to the Closing Date Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's expense.

**K.** Affidavit of Title; ALTA. Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.

**L.** Legal Description. The Parties may amend this Contract to attach a complete and correct legal description of the Property.

**M.** RESPA. Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

**N.** 1031 Exchange. The Parties agree that at any time prior to the Closing Date, Buyer and/or Seller may elect to effect a simultaneous or non-simultaneous tax-deferred exchange pursuant to Section 1031, and the regulations pertaining thereto, of the Internal Revenue Code, as amended. Each party expressly agrees to cooperate with the other party in connection with any such exchange in any manner which shall not impose any additional cost or liability upon the cooperating party, including without limitation by executing any and all documents, including escrow instructions or agreements consenting to the assignment of any rights and obligations hereunder to an exchange entity, which may be necessary to carry out such an exchange provided, however, that any election to effect such an exchange shall not delay the Closing Date.

**O.** Transfer Taxes. Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish any declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinances with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

**P.** Removal of Personal Property. Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

**Q.** Surrender. Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted, subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that portion of the total cost related to the violation that is below $250.00.

**R.** Time. Time is of the essence for purposes of this Contract.

**S.** Number. Wherever appropriate within this Contract, the singular includes the plural.

**T.** Flood Plain Insurance. In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

**U.** Business Days and Time. Any reference in this Contract to "day" or "days" shall mean business days, not calendar days, including Monday, Tuesday, Wednesday, Thursday, and Friday, and excluding all official federal and state holidays.

**V.** Patriot Act. Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

**W.** Brokers. The real estate brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the listing broker to a multiple listing service in which the listing and cooperating broker both participate.

**X.** Original Executed Contract. The listing broker shall hold the original fully executed copy of this Contract.

Buyer Initials _____    Buyer Initials _____    4 of 6    Seller Initials _____    Seller Initials _____

RIDER A

1. The buyer will waive all buyer contingencies after the ten (10) business day attorney approval and inspection period.

2. After the ten (10) business day attorney approval period, the contract is contingent upon seller obtaining title on the 3337-39 N. Halsted property through a sheriff sale and consequently closing on the sale of both properties to buyer within thirty calendar days after the sheriff sale date.

3. The closing on both properties will occur simultaneously.

# EXHIBIT B

## ASSIGNMENT AND ASSUMPTION AGREEMENT

For Ten Dollars and other good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged, Wells Street Companies ("Assignor"), does hereby assign, transfer and convey all of its right, title and interest in and to that certain Apartments/Investment Purchase and Sale Contract dated April 23, 2012, between Assignor and Northbrook Loans, LLC, a copy of which is attached hereto (the "Agreement"), relating to the acquisition of that certain real estate commonly known as 3337-41 N. Halsted, Chicago, Illinois, to Halsted Investment Partners, LLC, an Illinois limited liability company ("Assignee"), and Assignee does hereby assume all payments, terms and obligations arising under and in connection with the Agreement that may accrue subsequent to the date hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the 17th day of July, 2013.

ASSIGNOR:

Wells Street Companies

By: _____
    Arthur Holmer, Manager

ASSIGNEE:

Halsted Investment Partners, LLC

By: Wells Street Equities, LLC
Its:   Manager

By: _____
    Arthur Holmer, Manager

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| HALSTED INVESTMENT PARTNERS, LLC<br>An limited liability company, | ) | |
| | ) | No. 13 CH 21556 |
| Plaintiff, | ) | |
| | ) | Property Address: |
| vs. | ) | 3335-37 North Halsted Street & |
| | ) | 3339-41 North Halsted Street |
| NORTHBROOK LOANS, L.L.C., | ) | Chicago, IL |
| | ) | |
| Defendants. | ) | Calendar 11 |

### NOTICE OF MOTION

To:    Glenn L. Udell - Brown, Udell, Pomerantz & Delrahim, Ltd. 1332 N. Halsted St., Suite 100 Chicago, IL 60642

On ___1/14___, 2013 *2014*, at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Kathleen G. Kennedy, or whoever shall sit in her stead in her usual Courtroom 2502, Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois, and shall then and there present **the Motion of the Defendant to Dismiss**, a copy of which motion is herewith served upon you.

### CERTIFICATE OF VERIFICATION

Under penalties provided by law pursuant to §5/1-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/1-109, the undersigned certifies that the above referenced document(s) were served upon all parties at their respective address by causing the same to be ☐ personally delivered, ☐ telefaxed, ☐ sent via overnight mail, ☐ sent via email, and/or ☒ placed in the U.S. Mail at 17 North State Street, Chicago, Illinois 60602, at or before 5:00 p.m., on ___12/4___, 2013, with proper postage prepaid.

_____
Michael J. Goldstein & Associates, Ltd.

Michael J. Goldstein
Michael J. Goldstein & Associates, Ltd.
Attorney for Plaintiff
17 North State Street, Suite 990
Chicago, Illinois 60602
Telephone: (312) 346-0945
Email: mjg@mjglaw.com
Attorney No. 20137