```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


Northbrook Loans, LLC,              )
                                    )
     Creditor-Appellant,             )
                                    )
                                    )
     v.                             )   Case 15 C 5222
                                    )
                                    )
BlackAMG, et al.                    )
                                    )
     Appellees.                     )
```

MEMORANDUM OPINION AND ORDER

In this bankruptcy appeal, Creditor-Appellant Northbrook Loans asks me to reverse the bankruptcy court's order dismissing Debtor-Appellee BlackAMG's Chapter 11 petition pursuant to 11 U.S.C. § 1112(b). Northbrook argues that the bankruptcy court failed to consider the best interests of creditors in determining that dismissing the case, rather than converting it to a Chapter 7 case, was appropriate. For the following reasons, I affirm the bankruptcy court's decision.

I.

The factual landscape leading up to BlackAMG's voluntary bankruptcy petition is complex, but most of it need not be described

in detail.[1] In short, Northbrook holds a mortgage on property located at 3339-3341 N. Halsted Street in Chicago, Illinois, on which BlackAMG owes approximately $2.6 million. The property is also encumbered by several additional claims.

In March of 2011, Northbrook filed a complaint in the Circuit Court of Cook County to foreclose the Halsted Street property. Northbrook obtained a judgment of foreclosure in November of 2012, but it has not attempted to effectuate the court-ordered sale of the property. Meanwhile, while the foreclosure action was pending, Northbrook agreed to resell the property to a third party, Wells Street Companies, at a predetermined price, provided Northbrook obtained title to the property after a judicial sale.[2] A receiver was appointed in June of 2011 and remains in possession of the property to this day.

Nearly two years after the judgment of foreclosure was entered, and with no judicial sale in sight, BlackAMG filed its Chapter 11 petition on September 8, 2014. Previously, BlackAMG had entered into an agreement to sell the Halsted Street property, subject to all encumbrances except Northbrook's mortgage, to OUT Chicago, LLC, which was also interested in an adjacent, previously foreclosed property

---

[1] The factual summary below is drawn from BlackAMG's account of the circumstances surrounding its bankruptcy petition, which Northbrook characterizes as "irrelevant" and "extraneous" but does not dispute.
[2] I am mindful that this summary oversimplifies the nature of the transaction contemplated by Northbrook's agreement with Wells Street, as well as the conditions under which the transaction would occur, but the details I have omitted do not alter my analysis here.

2

also owned by Northbrook. BlackAMG filed its bankruptcy petition on the understanding that OUT Chicago would fund its restructuring plan, provided that OUT Chicago could reach an acceptable agreement for the purchase of the adjacent property from Northbrook. But after negotiations between OUT Chicago and Northbrook for the purchase of the adjacent property fizzled, OUT Chicago was unwilling to fund BlackAMG's restructuring plan and opted instead to acquire the rights of BlackAMG's other creditors. In this context, BlackAMG determined that reorganization in bankruptcy was no longer a viable solution and moved to dismiss its petition.

All interested parties were invited to file written submissions in support or opposition to BlackAMG's motion. OUT Chicago, Halsted Investment Partners, LLC,[3] and Rob Brumbaugh supported the motion to dismiss. Only Northbrook opposed it. The bankruptcy court held a hearing on the motion at which each of these parties, as well as the United States Trustee, was present through counsel. At the end of the hearing, the court granted BlackAMG's motion to dismiss.

II.

There is no question that under 11 U.S.C. § 1112(b), a bankruptcy court "has broad discretion to dismiss or convert a Chapter 11 case for cause, and its decision is reviewed for an abuse of discretion." *Han v. Linstrom*, No. 02 CV 213, 2002 WL 31049846, at *4 (N.D. Ill.

---

[3] Halsted Investment Partners is the successor-in-interest to Wells Street Companies' rights under the agreement by which Northbrook agreed to sell the Halsted properties at a predetermined price.

3

Case 14-32758    Doc 84-1    Filed 11/17/15    Entered 11/17/15 10:20:11    Desc
Case: 1:15-cv-05222 Document #: 20 Filed: 11/13/15 Page 4 of 8 PageID #:591
Memorandum   Opinion and Order    Page 4 of 8

Sept. 12, 2002) (Guzman, J.). The court's analysis proceeds in two steps: first, it must determine whether "cause" exists for either dismissal or conversion. *Id*. Next, it decides "which option is in the best interest of creditors and the estate." *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994) (citation and internal quotation marks omitted). In the second step, the court must compare "the creditors' interests in bankruptcy with those they would have under state law," and must "consider the interest of *all* creditors." *Id*. at 243 (original emphasis).

It bears noting, at the outset, that with the exception of Northbrook, every party to have weighed in on the issue supported BlackAMG's motion to dismiss. Northbrook insists that the bankruptcy court's analysis was flawed because it ignored the creditors' interests and focused instead on Northbrook's conduct during the proceedings. But that portrayal of the bankruptcy court's decision is inaccurate. The bankruptcy judge reviewed each of the multiple submissions filed in support of BlackAMG's motion, including one by Rob Brumbaugh, one of the creditors that Northbrook claims is better protected in bankruptcy than under state law. The judge also reviewed Northbrook's opposition, and she noted how "unusual" Northbrook's position was, given that Northbrook itself had already sought and obtained a judgment of foreclosure in state court. Tr. at 2-3, 16 (DN 11-1). Indeed, Northbrook does not dispute that its own interests are secure in either forum.

4

Case 14-32758    Doc 84-1    Filed 11/17/15    Entered 11/17/15 10:20:11    Desc
Memorandum    Opinion and Order    Page 5 of 8
Case: 1:15-cv-05222 Document #: 20 Filed: 11/16/15 Page 5 of 8 PageID #:592

In view of Northbrook's highly unusual position, the bankruptcy court was well within its discretion to consider the facts surrounding BlackAMG's Chapter 11 petition. At the hearing, BlackAMG referred to the negotiations among BlackAMG, OUT Chicago, Northbrook, and others that led up to BlackAMG's bankruptcy filing, and explained, "the whole point of filing this Chapter 11 case was to create a vehicle where creditors could get the greatest value for the property. When the creditors got together and decided that they were no longer willing to use this vehicle to achieve that result, it became clear to us that dismissal was in the best interest of creditors." *Id*. at 6. BlackAMG and others expressed the view that BlackAMG's main asset—the Halsted property—would be sold in either event, and that a bankruptcy sale was unlikely to yield more than a sheriff's sale in foreclosure. In fact, the property would arguably fetch a *higher* price in foreclosure. Tr. at 7-9; *see also* Debtor's Mot. to Dismiss, 14-32758 DN 48 at ¶ 22.

OUT Chicago and Halsted Investment Partners further argued that Northbrook wanted the sale to occur in bankruptcy rather than in foreclosure for reasons that have nothing to do with the property's potential sale price or a comparison of creditors' likely recovery in each scenario, but instead with the fact that Northbrook hopes to avoid its obligation pursuant to its agreement with Wells Street to

5

Case: 1:15-cv-05222 Document #: 20 Filed: 11/19/15 Page 6 of 8 PageID #:598
Case 14-32758 Doc 84-1 Filed 11/17/15 Entered 11/17/15 10:20:11 Desc
Memorandum Opinion and Order Page 6 of 8

resell the property at a certain price.[4] While Northbrook disputed the characterization of its conduct as "an abuse of process," it did not dispute the facts supporting these entities' argument. *See* Tr. at 14. Instead, Northbrook simply reiterated that proceeding in bankruptcy was in the best interest of creditors and asserted that it was "more economical" to remain in bankruptcy than to return to state court. *Id*. at 15.

The bankruptcy court expressed skepticism as to the economy of conversion, noting that appointing a Chapter 7 trustee imposes additional costs, which the court found unwarranted under the circumstances. The court further explained to Northbrook's counsel, "I don't really see the need for bankruptcy court intervention here. If the property is worth more than your lien, there will be money left to pay the other creditors. You don't need bankruptcy for that. ... [N]obody has alleged here that there's been any wrongdoing or any fraud, something that needs to be investigated by a Chapter 7 trustee." Tr. at 13. The bankruptcy judge observed that Northbrook's opposition to dismissal ran counter to "everything that [Northbrook] actually had happen in this case" and rejected Northbrook's eleventh-hour contention that keeping the case in bankruptcy was in the best interest of all the creditors. *Id*. at 17.

---

[4] Apparently, Northbrook has taken, or is expected to take, the position that if the property is sold in bankruptcy, rather than in a sheriff's sale pursuant to foreclosure, the condition triggering Northbrook's obligation to resell the property to Wells Street will not be met. *See* Tr. at 9.

Case 14-32758   Doc 84-1   Filed 11/17/15   Entered 11/17/15 10:20:11   Desc
Case: 1:15-cv-05222 Document #: 20 Filed: 11/13/15 Page 7 of 8 PageID #:594
Memorandum   Opinion and Order   Page 7 of 8

The judge went on to state, "I've got no unsecured creditors who want this case to remain in bankruptcy. And the only unsecured creditors I've really heard talk about, frankly, are mechanic's lienholders. And whatever happens to them is going to happen to them in state court no matter what." *Id*. at 18-19. These observations reflect that the court did, indeed, consider the best interests of BlackAMG's creditors, and properly weighed these interests against the cost of appointing a Chapter 7 Trustee. *See In re Babayoff*, 445 B.R. 64, 82 (Bankr. E.D. NY, 2011) ("[t]he possible benefits of conversion must be weighed against the incremental costs to the estate.").

Nothing in Northbrook's briefs on appeal establishes that the bankruptcy court abused its discretion under § 1112(b). As Northbrook acknowledges, there is no "bright-line test to determine [whether] conversion or dismissal is in the best interests of creditors and the estate." *Babayoff*, 445 B.R. at 81 (original alteration). Northbrook insists that many of the ten factors that Collier on Bankruptcy lists as among those courts "may" consider militate in favor of conversion here. But its analysis amounts to little more than a recitation of generic principles, untethered to the facts of this case. For example, Northbrook relies heavily on Collier's first factor— "equality of distribution," arguing that only two creditors (itself included) have any possibility of recovery in the foreclosure proceedings, while bankruptcy "would at least preserve the possibility of a recovery for all creditors." Appellant's Br. at 5,

citing Collier on Bankruptcy ¶ 1112.04[7] at 1112-41 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). But this argument rests primarily on Northbrook's own predictions about how the junior lienholders' claims will be resolved in the foreclosure proceedings, *see* Appellant's Br. at 9 (citing to its opposition to debtor's motion to dismiss), which may or may not bear out. Moreover, it ignores that every creditor to have expressed a view on the issue favored dismissal to conversion.

Northbrook's treatment of the remaining factors discussed in Collier on Bankruptcy—which the bankruptcy court was not required to address in any event—is no more compelling and does not warrant discussion. As the record reflects, the bankruptcy court properly considered the best interest of the creditors and the estate, and it was well within its discretion to conclude that dismissal, rather than conversion, was appropriate.

III.

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 13, 2015

8